[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM RE MOTION TO SUPPRESS
Julio Rodriguez is a young defendant with considerable experience with the criminal justice system, including the police interrogation process. He testified that he was a smart guy on such issues. He was a member of the street gang known as the Latin Kings during the dates involved here.
On February 15, 1996 one Anthony DeJesus was gunned to death, allegedly during the course of a robbery.
On March 5, 1996 one Maryanne Terpack, the pregnant girlfriend of the defendant, gave a statement to the Waterbury Police Department indicating that the defendant gave her details concerning the death of Anthony DeJesus which implicated him as a participant. (He is charged with felony murder.)
Thereafter Ms. Terpack was incarcerated at York Institution in Niantic in lieu of bonds set on criminal charges which arose in her hometown of Stamford, Connecticut. During her stay at York she was not contacted by the defendant.
Late in the morning of March 8, 1996, the defendant was located at another person's residence in Bristol, Connecticut by the Waterbury Police Department. He was questioned and he agreed to accompany Sergeant Michael Ricci and Detective Pelosi.
The three proceeded to the Waterbury Police Department Detective Bureau where the defendant was advised of his constitutional rights orally and in writing. The advisement was in the English language and the record is more than ample to support the defendant's familiarity and proficiency with the CT Page 531 English language. The defendant also signed an advisement of rights card after having read a portion of that card aloud to Sergeant Ricci in the English language.
Sergeant Ricci then proceeded to interview the defendant in a room he called the "computer room" in the detective bureau. The interview was not constant and the defendant had periods of time when he was alone and all of his comfort needs were attended to.
The defendant was shown two statements given to the police by his girlfriend, Maryanne Terpack, and another friend. The defendant testified that he believed he was shown these so that he would do it to them as well, i.e., implicate them in criminal activity. The defendant testified that Sergeant Ricci was "trying to get me riled up so that I would get them in trouble."
The defendant started to give a statement at 2:10 p. m. on that day and it was later typed in a computer and finished at 5:15 p. m. and signed by the defendant along with another advisement of rights form. (The defendant made corrections in the text.)
Hours after the statement giving commenced, and after it was typed, Sergeant Ricci called Mr. Ismael Santiago, a licensed bailbonds person and informed him that there was a female (Maryanne Terpack) that may need his services. The motivation for Sergeant Ricci's phone call was strictly humanitarian. He had previously inquired of the defendant as to her well-being as he knew she was pregnant. It was the defendant's position at the hearing on this motion that the statement he gave the police was a lie, although it apparently comports to his girlfriend's earlier statement to the police which echos similar admissions by the defendant. It was also the defendant's position that he only gave that false statement to free his girlfriend so that that their unborn child would not be born in prison and be taken away from her by the state. (At one point in his testimony he stated his concern was not the girlfriend but the baby. Later he testified that his concern was the girlfriend.)
The State's witnesses all deny the defendant's version and the court finds the credibility issues against the defendant. It was clear from all of the witnesses, prosecution and defense, that, other than Sergeant Ricci being the "contact person" with the bailbonds person, the bonding situation was a CT Page 532 normal bail arrangement between an accused, Maryanne Terpack and the bailbonds person, Ismael Santiago.
At the detective bureau Mr. Santiago's first question was who would pay him. He was told that Maryanne Terpack would pay his fee when she was released. He testified that he bonded Ms. Terpack out for business reasons and not as a favor to Sergeant Ricci or the defendant. Mr. Santiago asked Ms. Terpack "when am I going to get paid?" Ms. Terpack indicated that her parents would pay the fee and she acknowledged that she owed the fee.
The court finds that Sergeant Ricci's actions here in contacting the bailbondsman were gratuitous and not the part of any scheme to coerce confession from the defendant. There is no causal relationship between the release of Ms. Terpack and his giving a statement and it was not the motivating factor for that statement. The court finds, after observing the witnesses and their demeanor, that this was not a quid pro quo situation. This is a case, under the totality of the circumstances, in which a savvy young man made a voluntary and free will decision to give an oral and written statement to Sergeant Ricci after being fully and completely advised of his constitutional rights.
The motion is accordingly denied.
CHARLES D. GILL, J.